UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA P. VALERO,<br><br>    Plaintiff,<br><br>    v.<br><br>SAN FRANCISCO STATE UNIVERSITY,<br><br>    Defendant. | Case No. 12-cv-04744-TEH<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

This matter came before the Court on March 24, 2014, on Defendant's motion for summary judgment. Having considered the arguments of the parties and the papers submitted, the Court now GRANTS Defendant's motion for the reasons set forth below.

**BACKGROUND**

Plaintiff Christina Valero ("Valero") is an Asian woman, born in 1954, who suffers from a spinal disability and claustrophobia. Valero has been employed by Defendant San Francisco State University ("SFSU") since January 14, 1995. Until March 27, 2012, Valero's duties at SFSU involved assisting employees with disabilities to seek reasonable accommodations. While in this role, she alleges that she applied for promotions in 2001, 2006, 2008, and 2009, which were all denied. On March 27, 2012, Valero was reassigned from her reasonable accommodations position to a position assisting disabled students with accessible technology.

Valero contends that the denials of promotion and the reassignment constitute discrimination and retaliation based on her sex, race, age, and disability. She brings the following causes of action against SFSU: (1) retaliation under California's Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12900 *et seq.*; (2) age discrimination under FEHA; (3) sex discrimination under FEHA; (4) race discrimination under FEHA; (5) violation of public policy; (6) disability discrimination under FEHA; (7)

1  age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29
2  U.S.C. §§ 621-634; (8) sex discrimination under Title VII of the Civil Rights Act ("Title
3  VII"), 42 U.S.C. § 2000e *et seq.*; (9) race discrimination under Title VII; (10) disability
4  discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et*
5  *seq.*; (11) retaliation under the ADA; and (12) failure to prevent discrimination under
6  FEHA.

7      SFSU seeks summary judgment on Valero's second, third, fourth, seventh, eighth,
8  ninth, and twelfth causes of action (the "sex, race, and age discrimination claims"), arguing
9  that she failed to make out a prima facie case as she did not present any evidence that she
10 suffered an adverse employment action, or was in any way treated differently because of
11 her protected characteristics. On Valero's sixth and tenth causes of action (the "disability
12 discrimination claims"), SFSU seeks summary judgment on the ground that Valero has
13 failed to make out a prima facie case as she has not demonstrated that she suffered an
14 adverse employment action. SFSU seeks summary judgment on Valero's first and
15 eleventh causes of action (the "retaliation claims"), contending that she again failed to
16 make out a prima facie case, particularly that she engaged in any protected conduct.
17 Finally, SFSU also seeks summary judgment on Valero's fifth cause of action for violation
18 of public policy because SFSU is immune from common law tort claims.

19

20 **LEGAL STANDARD**
21     Summary judgment is appropriate if "there is no genuine dispute as to any material
22 fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.
23 Material facts are those that may affect the outcome of the case. *Anderson v. Liberty*
24 *Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there
25 is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*
26 At the summary judgment stage, the court must view the evidence in the light most
27 favorable to the nonmoving party. *See Nolan v. Heald Coll.*, 551 F.3d 1148, 1154 (9th Cir.
28 2009).

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 985 (9th Cir. 2007). However, on an issue for which its opponent will have the burden of proof at trial, the moving party can prevail merely by "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. The non-moving party must then "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). It is not the duty of the district court "to scour the record in search of a genuine issue of triable fact." *Id.* "[A] mere scintilla of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some significant probative evidence tending to support the complaint." *Summers v. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997) (citation and internal quotation marks omitted). If the non-moving party fails to make such a showing on an essential element for which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex Corp.*, 477 U.S. at 323.

**DISCUSSION**

As an initial matter, Valero concedes that SFSU is entitled to summary judgment on her fifth cause of action for violation of public policy. The Court therefore grants summary judgment to SFSU on the fifth cause of action and focuses on Valero's remaining claims.

I.   **Sex, Race, and Age Discrimination Claims**

To prevail on any claim of discrimination based on disparate treatment under Title

3

1   VII, a plaintiff must first establish a prima facie case that gives rise to an inference of
2   unlawful discrimination.  To do so, a plaintiff must show that: (1) she belongs to a
3   protected class; (2) she performed her job satisfactorily; (3) she suffered an adverse
4   employment action; and (4) her employer treated her differently than a similarly situated
5   employee who does not belong to the same protected class.  *Cornwell v. Electra Cent.*
6   *Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006) (citing *McDonnell Douglas v. Green*,
7   411 U.S. 792, 802 (1973)).
8         If a plaintiff succeeds in establishing a prima facie case of the above four factors,
9   the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason
10  for its conduct.  If the defendant provides such a reason, the burden then shifts back to the
11  plaintiff to show that the employer's reason is pretext.  *McDonnell Douglas,* 411 U.S. at
12  802-804; *Vasquez v. County of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2003).  This
13  burden-shifting framework is also applicable to claims of discrimination based on
14  disparate treatment pursuant to California's FEHA.  *Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th
15  317, 354 (2000).
16        SFSU argues that it deserves summary judgment on Valero's sex, race, and age
17  discrimination claims as there is an absence of evidence that Valero suffered an adverse
18  employment action, or was treated differently because of her alleged protected
19  characteristics – the third and fourth prongs of a prima facie case.  As the establishment of
20  a prima facie case is Valero's burden at trial, SFSU can prevail on summary judgment by
21  "pointing out to the district court . . . that there is an absence of evidence to support
22  [Valero's] case." *Celotex*, 477 U.S. at 325.  In opposition, Valero must "identify with
23  reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*,
24  91 F.3d at 1279.
25        Regarding the third prong, Valero alleges that she suffered an adverse employment
26  action when SFSU denied her promotions and transferred her to a position with "no
27  duties." Compl. ¶ 10.  The Court first considers the transfer and whether there is a genuine
28  issue of material fact regarding its adverse impact on Valero.  SFSU submitted a copy of a

4

February 7, 2012 Reassignment Request showing that Valero was transferred within the university's Disability Programs and Resource Center from a Reasonable Accommodations Program Assistant to an Accessible Technology Commons ("ATC") Program Assistant. Martin Decl., Ex. 3 at SFSU0006. Copies of the position descriptions show that in her new role, her duties continued to be similar in that she still assisted persons with disabilities with accessibility issues, she maintained the same civil service class, and she kept the same salary. *Id*.; *see* ATC Position Description (Martin Decl., Ex. 3 at SFSU0001-SFSU0003); Reasonable Accommodations Position Description (Martin Decl., Ex. 3 at SFSU0023-SFSU0025). Based on these records, SFSU argues, there was nothing adverse about Valero's reassignment, she was merely laterally transferred.

To rebut SFSU's evidence that her transfer was not adverse, Valero contends that her new job is a "dead-end, busywork job" and that her "prospects for advancement now are nil." Valero Opp. at 7-8. To support her contention, Valero offers only her own declaration where she states that her duties have been "removed," that her new job requires no specialized work, she cannot apply her expertise, and there is "no opportunity for advancement." Valero Decl. ¶¶ 22, 37. However, "[a] conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." *FTC v. Publ'g Clearing House*, 104 F.3d 1168, 1171 (9th Cir. 1996) (citing *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993). Furthermore, "[w]hen the nonmoving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact." *Hansen*, 7 F.3d at 138. Beyond her own conclusory statements, Valero fails to provide support for her claim that the transfer was adverse to her, and therefore there is no genuine issue of material fact. The transfer did not constitute an adverse employment action.

The second adverse employment action Valero alleges she suffered is a series of promotions she claims she was denied in 2001, 2006, 2008, and 2009. Compl. ¶ 6. As Valero's deposition clarifies, what she sought during this time period was not a promotion

5

to another position, but to reclassify her position into a higher pay grade. Valero Dep. at 137:1-16 (Gowe Decl., Ex. 1). That is, she sought to have her Reasonable Accommodations Program Assistant position reclassified from the Administrative Analyst/Specialist I civil service class to the Administrative Analyst/Specialist III civil service class. *Id.*; Compl. ¶ 6. Under the terms of the collective bargaining agreement applicable to Valero, to reclassify her position into another civil service class she was required to submit a request. Collective Bargaining Agreement § 9.26 (Martin Decl., Ex. 2). At her deposition, Valero stated that there is an official reclassification request form, but could only recall one occasion when she submitted the form. Valero Dep. at 45-46, 61. Consistent with that testimony, SFSU presented Human Resources records reflecting one written request from Valero in 2008, which was denied. January 29, 2008 Reclassification Memo (Martin Decl., Ex. 3 at SFSU0012). At the hearing, Valero's counsel represented to the Court that Valero had in fact only requested a reclassification once. As such, the Court limits its inquiry to only the 2008 request.

Limited to just the 2008 application for reclassification, the Court concludes that Valero has put forth sufficient evidence to raise a genuine issue of material fact that the denial of her requests constitute an adverse employment action. Although she did receive a 6% salary raise as a result of her request, *id.*, SFSU has not shown that Valero was completely unharmed by the denial, and it is reasonable for the Court to conclude that a denial of promotion would have both pecuniary as well as other impacts. As a denial of promotion is considered an "easy to identify" adverse employment action, *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002), and in the light most favorable to Valero, the denial of reclassification here appears rather similar, the Court holds that for the purposes of summary judgment, Valero's 2008 denial of reclassification constitutes an adverse employment action.

The court now considers the fourth prong of Valero's prima facie case, whether SFSU "treated [Valero] differently than a similarly situated employee who does not belong to the same protected class." *Cornwell*, 439 F.3d at 1028. In her complaint, Valero alleges

6

that while she was denied reclassifications and salary increases, younger, Caucasian males received them. Compl. ¶ 7. At her deposition, Valero offered the names of five people she said were younger, Caucasian males who received the reclassification she had been denied. Valero Dep. at 145-149. Valero's own deposition shows, however, that none of those five – two of whom are women – were reclassified to or from the same civil service classes that Valero had sought. *Id.* at 146-154. They were persons hired from, for example, a student assistant position into an Administrative Analyst/Specialist I classification – the same class Valero held. *Id.* at 148-149. The pay and benefits associated with promotion to and from various classifications and the considerations entailed in determining reclassifications vary, and Valero offers no evidence or argument as to how persons who sought entirely different reclassifications – two of whom are also women – can be considered "similarly situated" to her.

Moreover, since the university began keeping records on reclassifications in 1999, its records show that for the reclassification Valero was seeking – upward from Administrative Analyst/Specialist I – only 22 of 111 people were reclassified. Martin Decl. ¶ 4. Most of those reclassified were, like Valero, non-white women over 40 years old. *Id.* The youngest person to have been reclassified was 48; 17 of the 22 total people reclassified were female; and 12 of the 22 were non-white. *Id.* SFSU also submitted evidence that Valero received regular pay increases until 2007, when cuts were implemented across the board. Martin Decl. ¶ 5. Similarly, Valero received bonuses until bonuses were limited across the university. *Id.* For example, in 1999, 140 people in Valero's civil service class, including Valero, received a bonus; however, in 2000, only 5 people did. *Id.* Thus, SFSU argues, there is no evidence Valero was treated differently from others similarly situated.

To rebut SFSU's position, Valero states that "[a] young, Caucasian male with Ms. Valero's proven competence and passion for the work would not have been denied promotion. That is simply not credible." Valero Opp. at 7. Beyond this unsupported conjecture, she offers no argument as to how she is similarly situated to the five people she

7

named at her deposition, nor does she offer any evidence to rebut SFSU's statistics that show that for the type of reclassification she sought, SFSU promoted people with the *same* race, gender and age as Valero. While it is not the Court's role to scour the record for any evidence that may raise a genuine issue of material fact, in the Court's thorough review of the record, the Court finds no evidence to support a claim that Valero was treated differently from others similarly situated. As Valero has thus failed to establish a prima facie case of discrimination based on sex, race, or age, the Court GRANTS SFSU summary judgment on Valero's second, third, fourth, seventh, eighth, ninth, and twelfth causes of action.

## II. Disability Discrimination Claims

SFSU argues that it is entitled to summary judgment on Valero's sixth and tenth causes of action for disability discrimination, because she has failed to establish a prima facie case. To establish a prima facie case of disability discrimination under California law and under the ADA, a plaintiff must show that: (1) he or she suffered from a disability; (2) could perform the essential duties of the job with or without reasonable accommodations, i.e., he was a "qualified individual"; and (3) was subjected to an adverse employment action because of the disability. *Brundage v. Hahn*, 57 Cal. App. 4th 228, 236 (2d Dist. 1997); *see also Green v. State of Cal.*, 42 Cal. 4th 254, 262 (2007); *Smith v. Clark Cnty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013). SFSU specifically challenges Valero's showing regarding the third prong of a prima facie case – that she suffered an adverse employment action.

Valero alleges that SFSU discriminated against her by "assigning her to a job she could not perform because of her disability." Compl. ¶¶ 20, 24. Valero claims her new position required her to work in a basement which she "could not do because of her claustrophobia." *Id.* ¶ 9. To the extent Valero alleges this is an adverse employment action relating to her disability, by the very terms of her complaint, Valero complained about the conditions of her new location and how it affected her claustrophobia, and she

8

was then reassigned back to her original desk. *Id.* ¶ 9. SFSU submitted copies of e-mails from Valero's supervisors, dated within two days of her transfer, telling Valero that if she felt uncomfortable in her new proposed work location due to her disability, she could simply stay on at her previous workstation. Chelberg Decl., Ex. 3. At the hearing, Valero's counsel confirmed that Valero had been permitted to stay at her desk but argued that there were delays in her receiving such permission – an argument unsupported in the record. As Valero appears to have been accommodated, she suffered no adversity due to her disability as a result of the transfer and there is no evidence to support a prima facie case. Accordingly, the Court GRANTS SFSU summary judgment on Valero's claims for disability discrimination, the sixth and tenth causes of action.

### III. Retaliation Claims

As with the sex, race, and age discrimination claims discussed above, for retaliation claims under the FEHA and the ADA, after a plaintiff establishes a prima facie case of retaliation, the burden of production shifts to the defendant to articulate a legitimate, non-retaliatory explanation for the adverse employment action. *See Winarto v. Toshiba Am. Electronics Components, Inc.*, 274 F.3d 1276, 1284 (9th Cir. 2001) (FEHA); *see also*, *Brown v. City of Tucson*, 336 F.3d 1181, 1186 (9th Cir. 2003) (ADA). "If the employer rebuts the inference of retaliation, the burden of production shifts back to the plaintiff to show that the defendant's explanation is merely a pretext for impermissible retaliation." *Winarto*, 274 F.3d at 1284. To establish a prima facie retaliation claim, "the plaintiff must show that he engaged in a protected activity, his employer subjected him to adverse employment action, and there is a causal link between the protected activity and the employer's action." *Flait v. North American Watch Corp.,* 3 Cal. App. 4th 467, 476 (1992); *see Coons v. Sec'y of U.S. Dep't of Treasury*, 383 F.3d 879, 887 (9th Cir. 2004).

SFSU contends that Valero has failed to establish any of the prongs of a prima facie case. The Court begins with the first prong – whether Valero engaged in a protected activity. Valero's claimed protected conduct is that she was "success[ful] in finding

9

1   reasonable accommodations for employees with disabilities." Compl. ¶ 10.  This conduct,
2   however, is precisely the job Valero was hired to perform and without more, Valero cannot
3   claim that merely doing the job she was hired to do constituted protected activity.  *See*
4   Position Description (explaining that the position involves being a support to the Disability
5   Programs Unit) (Martin Decl., Ex. 3 at SFSU00024); Chelberg Dep. at 20:1-14 (Gowe
6   Decl., Ex. 2) (explaining that Chelberg, as Valero's supervisor, expected her to assist in the
7   processing, researching and facilitation of reasonable accommodations for faculty and staff
8   with disabilities); *see also Motoyama v. Hawaii, Dep't of Transp.*, 864 F. Supp. 2d 965,
9   979 (D. Haw. 2012) ("Plaintiff did not engage in protected activity through the mere
10  performance of her job.").

11          In her declaration accompanying her opposition brief, Valero characterizes her
12  conduct more specifically as opposition conduct.  Valero Decl. ¶ 26.  Under the relevant
13  state and federal laws, employers are liable for discriminating or retaliating against those
14  who engage in any conduct to "oppose" unlawful employment practices, such as opposing
15  disability discrimination.  42 U.S.C. § 2000e-3; Cal. Gov't Code § 12940(h).  The Ninth
16  Circuit has explained that "opposition clause protection will be accorded whenever the
17  opposition is based on a reasonable belief that the employer has engaged in an unlawful
18  employment practice."  *Freitag v. Ayers*, 468 F.3d 528, 541 (9th Cir. 2006) (internal
19  quotations omitted).  To support her claim that she engaged in such opposition conduct,
20  Valero states in her declaration that: "Management wanted me to follow their directives
21  quietly even if they were violating the rights of the employees with disabilities.  I opposed
22  their decisions and tried to ensure that the rights of employees with disabilities were not
23  violated."  Valero Decl. ¶ 26.  Beyond her conclusory statement, however, Valero offers
24  no evidence that there were any unlawful practices for her to oppose.  The most specific
25  statement she makes on this point is that she "opposed when [her supervisors] Gene
26  Chelberg and Nicole Bohn denied appropriate accommodations of employees."  Valero
27  Decl. ¶ 28.  She provides no examples of the types of discriminatory directives
28  management promulgated or specifically what she did to oppose them.  She offers no

10

examples of instances where the supervisors proposed a particular unlawful course, or what action she took in response. Once more, "[a] conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." *FTC v. Publ'g Clearing House*, 104 F.3d at 1171 (citing *Hansen*, 7 F.3d at 138). Thus, the Court concludes that Valero has failed to show that she engaged in any protected opposition conduct. Accordingly, the Court GRANTS SFSU summary judgment on Valero's retaliation claims, the first and eleventh causes of action.

**CONCLUSION**

For the reasons stated above, Defendant's motion for summary judgment is GRANTED. The clerk is directed to enter judgment and close the case.

**IT IS SO ORDERED.**

Dated: 4/2/14

_____
THELTON E. HENDERSON
United States District Judge